# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | |
|---|---|
| In re: <br><br> ANDRIUS AUGUNAS, <br><br> Debtor. | Case No. 08 B 10655 (PSH) <br><br> Chapter 7 <br><br> Judge Pamela S. Hollis |
| EREF MEZZANINE FUND, LLC, <br><br> Plaintiff, <br><br> v. <br><br> ANDRIUS AUGUNAS, <br><br> Defendant. | Adv. No. |

## COMPLAINT OBJECTING TO DISCHARGABILITY OF DEBT

Plaintiff, EREF Mezzanine Fund, LLC ("Lender"), through its attorneys, Neal, Gerber & Eisenberg LLP, and pursuant to 11 U.S.C. § 523(a)(2)(A), brings this adversary proceeding against defendant, Andrius Augunas (the "Debtor"), to object to the dischargability of the debt owed by the Debtor to Lender. In support of this adversary complaint, Lender states as follows:

### JURISDICTION AND VENUE

1.  Jurisdiction is proper before this Court pursuant to 28 U.S.C. §§ 157(a) and (b) and 28 U.S.C. § 1334(b).

2.  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(I) arising out of the Chapter 7 case of *In re Andrius Augunas*, Case No. 08 B 10655 (PSH), United States Bankruptcy Court, Northern District of Illinois, Eastern Division (the "Bankruptcy Case").

3.  Venue is proper in this Court pursuant to 28 U.S.C. § 1409(a).

## GENERAL ALLEGATIONS

4. Plaintiff, Lender, is a Delaware limited liability company with its principal place of business in Chicago, Illinois.

5. The Debtor is an Illinois resident and commercial real estate developer. The Debtor was also the sole member of 2300 S. Michigan Development Group, LLC (the "Borrower").

6. The Borrower was formed for the purpose of acquiring, investing in, operating, and developing the real property commonly known as 2300-2310 South Michigan Avenue, Chicago, Illinois (the "Project").

7. The Project consisted of the construction by Borrower of a seven story condominium building, containing 94 residential condominiums, 8,600 square feet of retail space, 99 parking spaces, and certain other ancillary improvements and future improvements.

8. The Debtor was the direct owner of the ownership interests in and to the Borrower and had a financial interest in the Project.

9. In order to finance the Project, Borrower sought a loan facility from Lender. Lender made a loan to Borrower (the "Loan"), which is evidenced by, among other things, that certain Promissory Note dated as of March 16, 2007 and executed and delivered by Borrower in favor of Lender in the original principal amount of $4,200,000.00 (the "Note"), as well as that certain Loan and Security Agreement dated as of March 16, 2007 and executed and delivered by Borrower in favor of Lender (the "Loan Agreement"). A true and correct copy of the Note and Loan Agreement are attached hereto and incorporated herein as <u>Exhibit A</u> and <u>Exhibit B</u>, respectively.

10. To secure Borrower's obligations and liabilities to Lender under the Note and Loan Agreement, the Debtor executed that certain Guaranty of Payment and Completion in favor

of Lender and dated March 16, 2007 (the "Guaranty").  A true and correct copy of the Guaranty is attached hereto and incorporated herein as <u>Exhibit C</u>.

11.     Pursuant to the Guaranty, the Debtor absolutely and irrevocably guaranteed the payment of all the obligations and liabilities to Lender under the Note and any other amount that may become owing under the loan documents.

12.     The Debtor subsequently filed the Bankruptcy Case.

13.     Lender timely filed a proof of claim in the Bankruptcy Case for a general unsecured claim in the amount of $4,923,179.90 plus applicable accrued interest, fees, and costs (the "Debt"), which consisted of the principal and accrued interest due and owing to Lender under the Note and Guaranty.

14.     As detailed below, pursuant to 11 U.S.C § 523(a)(2)(A) & (B), the Debt is not dischargeable in the Bankruptcy Case because the loan was: (i) obtained by false pretenses, false representations, or actual fraud, and (2) obtained by use of a statement in writing that was materially false, respecting Debtor's financial condition, that Lender relied upon to its detriment, and that Debtor caused to be made with the intent to deceive.

**COUNT I – FALSE PRETENSES, FALSE REPRESENTATION & FRAUD § 523(a)(2)(A)**

15.     Lender realleges and incorporates by reference herein the allegations of paragraphs 1-14 of this Complaint as if fully set forth herein.

16.     Debtor knowingly and materially misrepresented the number of pre-sale contracts that Borrower had secured for the Project in order to appear to have satisfied various closing conditions under the Note and related loan documents in order to induce Lender to close and fund the Loan.

17. Debtor knowingly forged and/or otherwise fabricated numerous pre-sale contracts and earnest money deposits with respect to the Project in order to appear to have satisfied various closing conditions under the Note and related loan documents in order to induce Lender to close and fund the Loan.

18. After Lender had been improperly induced to fund the Loan, Debtor knowingly and improperly and without Lender's consent terminated various fabricated pre-sale contracts with respect to the Project and directed the financial institution holding the earnest money deposits for such fabricated pre-sale contracts to release such funds to Debtor, or at Debtor's direction to Debtor's nominee in violation of various loan documents.

19. After Lender had been improperly induced to fund the Loan, with respect to those certain and limited valid, third-party pre-sale contracts for the Project, Debtor knowingly and improperly and without Lender's consent directed the financial institution holding the earnest money deposited by such purchasers to release such funds to Debtor, or at Debtor's direction to Debtor's nominee, and specifically not to such purchasers thereby converting such funds in violation of such pre-sale contracts and various loan documents.

20. Debtor knowingly provided to Lender materially false and misleading financial statements regarding Debtor and materially false and misleading financial projections regarding the Project in order to induce Lender to close and fund the Loan.

21. Debtor knowingly provided to Lender materially false and misleading information concerning Debtor's qualifications, experience and capabilities as a commercial real estate developer with respect to complex residential construction projects in order to induce Lender to close and fund the Loan.

22.     Debtor knowingly induced Lender to close and fund the Loan by indicating that Debtor had the financial wherewithal and ability to fund additional equity into the Project – when in fact Debtor did not have the financial wherewithal or ability to fund such additional equity – on a scheduled basis in order to pay various costs of the Project that were specifically labeled on the Project budget as items to be paid for by Debtor outside of the construction loan for the Project, and when the time came during the course of the Project for Debtor to fund such Project costs, Debtor defaulted on such funding obligations.

23.     In order to induce Lender to close and fund the Loan, Debtor knowingly misrepresented the nature and status of that certain alleged commission agreement between Debtor and Sedgwick Properties Development Corporation ("Sedgwick") pursuant to which Sedgwick was allegedly retained by Debtor to secure construction financing for the Project, never indicating to Lender that Sedgwick was claiming a commission in excess of $315,000 pursuant to Sedgwick's role in procuring certain construction financing for the Project. Subsequent to the closing of the Loan, Sedgwick filed a breach of contract claim against Debtor (and certain other parties) demanding payment of a commission from Debtor in the amount of $316,316.95 pursuant to the closing of certain construction financing for the Project.

24.     The construction budget for the Project contained a line item for a "Developer Fee" to be paid monthly to the Debtor for development services on the Project. The Debtor knowingly accepted payment of the "Developer Fee" without having completed the prerequisite development services for the Project.

25.     Debtor induced Lender to close and fund the Loan by knowingly misrepresenting that Debtor had satisfied various conditions precedent to the Loan regarding the construction of the Project, specifically the requirement that various contractors and subcontractors post certain

performance bonds/insurance with respect to the construction work at the Project to be completed by such contractors and subcontractors. On information and belief, after the closing and funding of the Loan, Debtor agreed to waive such bonding/insurance requirements without the consent of Lender as required under the Note and various other loan documents, which eventually resulted in major mechanics lien litigation with respect to the Project with respect to the role of various contractors and subcontractors in the construction of the Project.

26. Accordingly, as detailed above, Debtor obtained money and an extension of credit for Debtor's benefit by false pretenses, false representations, or actual fraud.

WHEREFORE, pursuant to 11 U.S.C. § 523(a)(2)(A), Plaintiff, EREF Mezzanine Fund, LLC, respectfully requests that this Court determine that the Debt is non-dischargeable and grant such other and further relief that this Court shall deem just and appropriate.

## COUNT II – FALSE STATEMENT IN WRITING § 523(a)(2)(B)

27. Lender realleges and incorporates by reference herein the allegations of paragraphs 1-14 of this Complaint as if fully set forth herein.

28. Paragraph nine (9) of the Guaranty required Debtor to provide "true, complete, and correct" written financial statements to Lender, which financial statements disclosed and accurately represented Debtor's financial condition (the "Financial Statements").

29. Debtor provided the Financial Statements to Lender with the intent to deceive Lender.

30. The Financial Statements were and are materially false.

31. Specifically, the Financial Statements indicate that Debtor has assets of $38,597,814 and a net worth of $12,808,427, which written representations were and are

materially false.

32. Lender relied upon the accuracy and veracity of the Financial Statements in making the Loan. But for the presumed accuracy of the Financial Statements, Lender would not have made the Loan.

WHEREFORE, pursuant to 11 U.S.C. § 523(a)(2)(B), Plaintiff, EREF Mezzanine Fund, LLC, respectfully requests that this Court determine that the Debt is non-dischargeable and grant such other and further relief that this Court shall deem just and appropriate.

                              EREF MEZZANINE FUND, LLC


                              By: /s/ William Choslovsky
                                  One of Its Attorneys

William Choslovsky
NEAL, GERBER & EISENBERG LLP
Two North LaSalle Street
Suite 1700
Chicago, IL  60602-3801
(312) 269-8000

Dated: April 22, 2009